# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| v. | ) | No. 12-10145-MLB |
| SAMUEL BARRIOS, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case comes before the court on defendant's motion to suppress. (Doc. 12). The motion is fully briefed and the court conducted an evidentiary hearing on October 1, 2012. (Docs. 12, 16). The motion to suppress is denied for the reasons herein.

**I.  Facts**

On April 1, 2011, defendant Barrios was removed from the United States pursuant to a warrant of removal. At some point after his deportation, Barrios entered this country without authorization. In early February 2012, Wichita Police Department officers were called to a medical office due to an altercation which apparently involved a staff member and Barrios and/or his girlfriend, April Gaspar. A Wichita police officer then notified Rod Smith, a deportation officer with the Department of Homeland Security, that Barrios was in the area. Smith ran an inquiry in the database and determined that Barrios had been deported with the condition that he could not return to the United States for a period of ten years.

On March 1, Smith and Frank Padula, another deportation officer, interviewed individuals who disclosed Barrios' location as an

apartment at 2762 S. Seneca in Wichita, Kansas, where he lived with Gaspar. The officers were also given information about Gaspar's vehicle.[1] Smith and Padula arrived at the apartment complex, parked on the street and observed the area. At about 9:45 a.m., Gaspar pulled in the parking lot and exited her vehicle. Smith and Padula approached Gaspar and identified themselves as immigration officers. The officers showed Gaspar their credentials and asked if they could speak with her. Gaspar said yes.[2] Smith asked Gaspar if they could speak in her apartment and she said yes. Gaspar informed Smith that Barrios was in the apartment. Smith stated that it was important that the officers talk to Barrios.

When they arrived at the apartment, Gaspar unlocked the door with her keys. The door, however, only opened a few inches because it was chained on the inside. Gaspar attempted to yell for Barrios through the opening in the door and told Barrios that the police were there and they wanted to talk to him. Barrios, however, did not come to the door. After a few minutes, Smith then yelled through the opening in the door. Smith told Barrios that he needed to come to the door to talk to with the police. Smith was then silent and waited for Barrios to come to the door. After a few minutes, Barrios came out

---

[1] The officers may have had a photograph of Barrios. A "warrant of deportation" was identified at the hearing which supposedly was a copy of a document being carried by the officers. But the copy did not have Barrios' photo. This was never cleared up.

[2] Although Gaspar disputes this statement and essentially all testimony of both Smith and Padula, the court does not find Gaspar's testimony to be credible. Indeed, Gaspar turned out to be the government's best witness. By being so incredible, she, in effect, increased the credibility of the government agents whose testimony, viewed by itself, was not all that impressive.

-2-

of the apartment with his hands held out in front of him. Padula drew his weapon as Barrios was exiting the apartment and pointed it at the ground. Smith placed Barrios under arrest. Padula then entered the apartment to do a protective sweep of the living room after the arrest because of Barrios' gang affiliation and Padula's concern for safety.

Barrios asserts that he was illegally arrested and moves to suppress his identity, fingerprints, statement, and any other evidence seized as a result of his arrest.[3]

## II. Analysis

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This amendment guarantees freedom from unreasonable searches and seizures. United States v. Laughrin, 438 F.3d 1245 (10th Cir. 2006).

Warrantless searches and seizures are presumptively unreasonable and violate the Fourth Amendment unless they fall within a specific exception to the warrant requirement. See United States v. Karo, 468 U.S. 705 (1984); Roska ex rel Roska v. Peterson, 328 F.3d 1230, 1240 (10th Cir. 2003). The Government bears the burden of proving, by a preponderance of the evidence, that a warrantless search or seizure was valid. United States v. Finefrock, 668 F.2d 1168, 1170 (10th Cir.

---

[3] Although Barrios asserts that there was evidence gathered subsequent to his arrest, Barrios has failed to identify or produce that evidence to the court. The evidence introduced at the hearing did not establish what occurred after Barrios' arrest. Presumably, Barrios was fingerprinted as part of the customary arrest procedure but his post-arrest fingerprints would be subject to suppression only if fingerprinting was the objective of the illegal arrest. There is no evidence that Barrios was arrested so that he could be fingerprinted.

1982).

The Tenth Circuit has long recognized different types of police-citizen encounters: consensual and non-consensual. United States v. Reeves, 524 F.3d 1161, 1166 (10th Cir. 2008). Consensual encounters do not implicate the Fourth Amendment, but non-consensual encounters do. Id. Ordinarily, a so-called "knock and talk" – where officers knock on the door of a residence to initiate a conversation with the person inside – is deemed to be a consensual encounter. Id. However, a "knock and talk" is not consensual if the occupant is compelled to open the door and respond to the officers. Id. at 1166. The question of whether a conversation at an individual's front door is consensual or not depends, upon whether, in light of all of the circumstances, a reasonable person would feel free to decline the officer's requests – to refuse to open the door or to terminate the conversation once the door is opened. Id. at 1169.

Circumstances which may be pertinent include the time of day when the officers knock on the door, the manner in which the officers try to get the occupant's attention (e.g. whether the officers knock, pound or yell; whether they do so for an extended period of time), whether one or more officers is/are present, whether officers display their authority (e.g. by carrying a weapon or touching the person at the door), the behavior of the officers (e.g. whether officers shine a flashlight into the home, whether officers are persistent in the face of no response) and the language or tone of voice used (whether it conveys that compliance with the officers' request is compelled). Id. at 1168; see also United States v. Flowers, 336 F.2d 1222 (10th Cir. 2003). If the occupant is compelled to open the door, an

-4-

encounter on the threshold of a person's home amounts to a seizure of the occupant. Such seizure requires a warrant unless officers have probable cause to arrest and exigent circumstances exist. Reeves, 524 F.3d at 1169.

In this case, the encounter occurred in the morning, with two officers, who did not display their weapons prior to the door being opened. Smith asked Barrios to come outside to talk to him only once. There is no evidence that Smith was repeatedly yelling or that he was banging on the door. The evidence further showed that the whole interaction only lasted ten to fifteen minutes with Barrios coming out of the apartment a few minutes after Smith asked him to come out. There was no evidence that Smith or Padula made any threatening statements to either Gaspar or Barrios at any time. Viewing the totality of the circumstances surrounding the encounter, the court finds that the encounter was consensual.

Even if the court found the encounter to be non-consensual, the court would deny Barrios' motion to suppress his identity. In INS v. Lopez-Mendoza, 468 U.S. 1032, 104 S. Ct. 3479, 82 L. Ed.2d 778 (1984), the Supreme Court held that the "'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." 468 U.S. at 1039. In United States v. Olivares-Rangel, 458 F.3d 1104 (10th Cir. 2006), the Circuit discussed the holding in Lopez-Mendoza and clarified that while an individual's identity or body may not be suppressed under the "fruit of the poisonous tree" doctrine, other evidence which was seized as a result of the illegal arrest may be

-5-

suppressed.

At the time of the arrest, Smith was able to identify Barrios by his picture and he knew that Barrios was in the United States illegally. Unlike Olivares-Rangel, Smith did not need to do any further investigation or evidence gathering to support the current charge in this indictment. "The exclusionary rule enjoins the Government from benefitting from evidence it has unlawfully obtained; it does not reach backward to taint information that was in official hands prior to any illegality." United States v. White, 326 F.3d 1135 (10th Cir. 2003); see also United States v. Crews, 445 U.S. 463, 100 S. Ct. 1244 (1980)(a Fourth Amendment violation "yielded nothing of evidentiary value that the police did not already have in their grasp," because prior to the "illegal arrest, the police both knew respondent's identity and had some basis to suspect his involvement in the very crimes with which he was charged.") In this case, there has been no evidence that the government intends to utilize any evidence which it did not have prior to Barrios' arrest.

**III. Conclusion**

For essentially the same reasons given by Judge Baldock in his dissent in Olivares-Rangel, Barrios' motion to suppress is an exercise in futility. Barrios' identity is not subject to suppression under any circumstances. Barrios is in the United States illegally, an offense which is continuing. Even if Barrios' arrest was illegal, he would not be released because the INS has filed a detainer. Barrios' motion to suppress is accordingly denied. (Doc. 12).

A status conference will be held on October 22 at 10:45. The jury trial will be held on October 30 at 9:00 a.m.

IT IS SO ORDERED.

Dated this __4th__ day of October 2012, at Wichita, Kansas.

                                            s/ Monti Belot
                                            Monti L. Belot
                                            UNITED STATES DISTRICT JUDGE